**FILED**
U.S. District Court
District of Kansas

3/30/2021

Clerk, U.S. District Court
By_____AA_____Deputy Clerk

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the residence and devices located at<br>2518 E CAMBRIDGE COURT, PARK CITY, Kansas,<br>as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.  21-6033-GEB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

the residence and devices located at 2518 E CAMBRIDGE COURT, PARK CITY, KS, as described in Attachment A

located in the _____ District of _____Kansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252/2252A | Offenses relating to the Possession/Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

KASEV SUNDAR, SA, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___3/30/2021___

*Judge's signature*

City and state:  Wichita, KS

The Honorable Gwynne E. Birzer, US Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
for the

District of Kansas

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THE RESIDENCE AND DEVICES AT 2518 E CAMBRIDGE COURT, PARK CITY, KS 67219, as further described in Attachment A | Case No. ___21-6033-GEB___ |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Kasev R. Sundar, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search the premises and devices located at **2518 E CAMBRIDGE COURT, PARK CITY, KS 67219**, hereinafter "RESIDENCE," further described in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation and have been since January 8, 2021.  As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code § § 2252 and 2252A. Before becoming a Special Agent for the FBI, I was an Army Officer on Active Duty. One of my additional duties during my Active Duty time was conducting non-judicial military investigations into actions that violated military policies such as negligent discharges of firearms, vehicle safety violations, and workplace accidents resulting in injuries.

3.      I have received training on conducting a wide variety of criminal investigations, to include organized crime, drug trafficking, human trafficking, crimes against children, major theft, and other federal crimes. I have also received training on the preparation and execution of search warrants. I am currently conducting criminal investigations on multiple subjects.

4.      This affidavit is only intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5.      On May 4, 2020, an investigator serving as an Online Covert Employee (OCE) for the Winnebago County Sheriff's Office in Wisconsin began a proactive undercover investigation utilizing Kik Messenger, a social media platform that allows users to share messages photographs, and videos, posing as a 40-year-old female from Wisconsin. This undercover investigation was part of a larger joint investigative operation between the FBI's Milwaukee Division and the Winnebago County Sheriff's Office. The OCE entered multiple public groups on Kik Messenger, which appeared to be created for individuals interested in child sexual abuse material. From these groups, the OCE was added to multiple other private groups within Kik that had members openly engaging in the distribution of child sexual abuse material.

6.      One of these groups was named "private group 3.14 (anything goes)." Within this group, the OCE observed individuals posting images and videos of children being sexually exploited.

2

7.      Specific to this investigation, on June 13, 2020 at approximately 1:28 p.m. CST, the OCE observed "EJames2005" share an image to the group. The image (identified as IMG_2263.jpg) depicted a prepubescent female, with blonde hair that was styled with pigtails, who was completely naked, posed in a bent forward position to expose her pubic area and rectum while placing her face into the pubic area of a naked adult male who was seated. The male's genitals were not visible as the minor's head covered them, indicating the minor might have been made to perform oral sex on the male. The male was not visible from above his stomach.

8.      The OCE captured the profile page of the Kik user EJames2005. The picture on the profile page displayed a white male with dark hair. The name on the profile page was "James E", and the profile page stated that the user had been on Kik for one day indicating that the Kik user might have created the Kik account the day prior on June 12, 2020.

9.      On July 20, 2020, FBI Milwaukee sent a subpoena to Kik requesting subscriber data for this account. In response, Kik provided the subscriber's registration information, confirming the user EJames2005 created the Kik account on June 12, 2020 at 9:34 p.m. UTC. Kik also identified the IP address at the time of registration as 162.238.52.219. Kik also provided login information from June 21, 2020 to July 21, 2020. 264 of the 296 logins between June 21, 2020 to July 21, 2020 were conducted via the IP address 162.238.52.219. FBI Milwaukee did not obtain the IP address login for June 13, 2020 (the day of the observed distribution of child pornography).

10.     Given the registration of the account from IP address 162.238.52.219 on June 12, 2020, and the repeated logins to the account from IP address 162.238.52.219 starting on June 21 and continuing through July 21, 2020, the account appeared to be primarily operated and accessed through one or more devices connecting through that IP address.

11.     Open-source investigation revealed the IP address 162.238.52.219 was owned by AT&T. On September 8, 2020, FBI Milwaukee sent a subpoena to AT&T requesting subscriber information for 162.238.52.219 as of June 21, 2020. AT&T provided subscriber information as follows for June 21, 2020 from 12:00 a.m. to 11:50 p.m. UTC:

> Subscriber Name: Sarah James
> Subscriber Address: 2518 E Cambridge Ct, Park City, KS 67219
> Subscriber IP Address: 162.238.52.219

12.     After receipt of the lead, FBI Wichita issued a second subpoena to AT&T to obtain subscriber information for IP address 162.238.52.219 for the period of June 12 through June 22, 2020. On March 5, 2021, the subscriber information provided by AT&T showed, from June 12, 2020 at 5:00 a.m. UTC to June 22, 2020 4:40 a.m. UTC, the same subscriber as referenced above in paragraph 11:

> Subscriber Name: Sarah James
> Subscriber Address: 2518 E Cambridge Ct, Park City, KS 67219
> Subscriber IP Address: 162.238.52.219

13.     Because the EJames2005 account was registered on June 12, 2020 via the IP address returning to 2518 E Cambridge Ct, Park City (RESIDENCE), and again accessed on June 21, 2020 via the same IP address returning to the same RESIDENCE, there is probable cause to

4

believe the device(s) used for these activities is located at the RESIDENCE. Moreover, because Internet Service Providers will frequently maintain subscribers on the same IP address over extended periods of time, I believe it is probable that the user of EJames2005 accessed the account from RESIDENCE throughout operation of the account, including during the upload and distribution of child pornography on June 13, 2020 (the day after the account was registered).

14.     Queries of database information for the residence revealed that Sarah M. James lives at the RESIDENCE with her husband Gary M. James and their approximately 27-year-old son Blake Edward James.

15.     I have spoken to the Online Covert Employee via cellphone at least four times in the past four weeks regarding this case. From the conversations I have had with the OCE, I learned the OCE was still undertaking similar/additional investigations via Kik, and that the OCE observed the Kik user EJames2005 was still active, i.e. the profile for EJames2005 on Kik showed that the user was still online and logged into the Kik account. The OCE advised EJames2005 was no longer in the "private group 3.14 (anything goes)" group because Kik had shut down that group. The OCE also advised he had attempted to reestablish contact with EJames2005 by sending the user two messages via Kik, but EJames2005 has not yet responded.

**CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS**

16.     From consultation with more experienced agents, including Wichita Police Department detectives working with Kansas Internet Crimes Against Children (ICAC), I have

5

learned that individuals who are interested in the sexual exploitation of children frequently display

common characteristics, including:

    a.    they use child pornography to satiate their prurient sexual desires;

    b.    they utilize digital devices to access the Internet to seek, obtain, and traffic in child pornography;

    c.    they keep the device(s) used in their sexual gratification activities close-by, in part for immediate access and to maintain secure control over the contraband material;

    d.    they will protect and retain child pornography for long periods of time;[1]

    e.    they will frequently collect child erotica alongside images of child pornography (child erotica includes written material or visual depictions that do not meet the definition of child pornography, but which otherwise evince a sexual interest in children and the sexual abuse of children);

    f.    they seek out like-minded individuals to normalize their behavior and to identify avenues for accessing additional child pornography materials; and

    g.    the device(s) used by such individuals will retain evidence and artifacts of such activity.

    17.    In this instance, the user of the EJames2005 account on Kik displays many of the

above characteristics. For instance, the user has utilized the Internet to share child pornography

---

[1] *See United States v. Shields,* 458 F.3d 269, 279 (3d Cir. 2006) (noting nine month delay in applying for search warrant would not have supported staleness challenge due to context of child pornography offender behavior along with evidence of continuing offenses); *United States v. Schesso,* 730 F.3d 1040 (9th Cir. 2013) (finding delay of 20 months did not render probable cause stale in context of investigation); *see also United States v. Allen,* 625 F.3d 830, 842-43 (5th Cir.2010) (holding that an 18-month delay between when defendant sent child pornography images through a peer-to-peer networking site and issuance of a search warrant did not render the information stale); *United States v. Morales-Aldahondo,* 524 F.3d 115, 117-19 (1st Cir.2008) ( concluding that the passage of over three years since the acquisition of information that defendant's brother, who shared defendant's residence, had purchased access to various child pornography websites, did not render that information stale).

with other like-minded offenders. To post the child pornography observed by Law Enforcement over the Kik application, the user had to first seek out the child pornography and exert control over it. Likewise, the user has apparent familiarity with finding and gaining access to child pornography as well as groups interested in child pornography. The user's operation of the account indicates repetitive logins over time, as well as the user's involvement in the child pornography group(s) over time, suggesting retention of an account used for the purpose of connecting with other child pornographers.

18.     Because these activities involved the use of an Internet-based social media platform and necessarily involved a device (or devices) to access the platform, I expect the device(s) used by that individual will probably still contain child pornography, links to child pornography websites, or artifacts showing access to child pornography and a sexual interest in children.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

19.     As described above and in Attachment B, this application seeks permission to search for records that might be found in the RESIDENCE and on devices located therein, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e) (2) (B).

20.    *Probable cause.*  I submit that if a computer or storage media is found on the RESIDENCE, there is probable cause to believe those records will be stored on that computer or storage media, for at least the following reasons:

a.    Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto storage media, deleted, or viewed via the Internet. Electronic files downloaded to storage media can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage media until it is overwritten by new data.

b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage media that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers

were used, the purpose of their use, who used them, and when. There is probable cause to believe

that this forensic electronic evidence will be on any storage media in the RESIDENCE because:

a. Data on the storage media can provide evidence of a file that was once on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage media that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage media that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about when the data files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that is connected with the computer, and the IP addresses through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may show a particular location and have

9

geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on storage media that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on storage media.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

22.    *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a RESIDENCE for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the RESIDENCE, it is sometimes possible to

10

make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

    a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, who has used it requires considerable time, and taking that much time at the RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic examination of electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b.  Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present at the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on devices located at the RESIDENCE.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

23.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the

warrant, and would authorize a later review of the storage media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire storage media, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

24.    Because several people share the RESIDENCE as a residence, it is possible that the RESIDENCE will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

25.    I submit that this affidavit supports probable cause to believe that the RESIDENCE located at 2518 E Cambridge Court, Park City, KS 67219 and described in Attachment A does contain evidence of violations of 18 U.S.C. § 2252 and 2252A and therefore respectfully request that this Court issue a search warrant for the search of the premises and devices located at 2518 E Cambridge Court, Park City, KS 67219, being more specifically described in Attachment A which incorporated by reference as if fully set forth herein, authorizing the seizure and search of the items described in Attachment B herein.

Respectfully submitted,

KASEV R. SUNDAR
Special Agent

12

Federal Bureau of Investigation

Subscribed and sworn to before me on _____March 30_____, 2021.

_____

GWYNNE E. BIRZER
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

*Property to be searched*

The property to be searched is 2518 E Cambridge Court, Park City, KS 67219, further described as follows:

The residence is at the end of a cul-de-sac and is a ranch-style home with a finished basement, 4 bedrooms, 3 bathrooms, and is 1278 square feet in area. The exterior of the home is composed of dark grey vinyl, a dark grey roof, white bricks, and two white garage doors attached to the home (one of the garage doors is approximately twice as large as the other door). The home contains a front entryway. The front of the home has a cluster of four windows south of the front door. On the back of the home, a back door leads to a patio attached to the home and having a staircase that leads to the backyard of the home. There is at least one window on the back of the home and at least two windows on the south side of the home. A wooden fence surrounds the backyard of the home. Immediately west of the fence is a park named "Poston Park". Recent photographs of the residence are attached.





# ATTACHMENT B

*Property to be seized*

1.      Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica, in any format or media, including computer files, prints, negatives, drawings, and paintings.

2.      Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software programs, software applications computer related documentation, passwords and data security devices, and storage devices) that may be or are used to:

a.  distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

b.  seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

c.  communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

d.  any and all data or information on the device which may relate to subparagraphs 2a, 2b, and 2c, including data or information that may reveal indicia of ownership, access, or use.

3.      Any and all notes, documents, records, correspondence, in any format and media (including, but not limited to, envelopes, letters, papers, diaries, manifestos, manuals, email messages, chat logs and electronic messages, and handwritten notes) pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

4.      Any and all cameras, film, videotapes or other photographic equipment, which may be used to contain, create or duplicate child pornography, visual depictions of minors engaged in sexually explicit conduct, or child erotica.

5.      Any and all documents, records, or correspondence, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

6.      Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic

2

messages, and other digital data files) that concern any accounts with an Internet Service Provider.

7.      Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

8.      Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

9.      Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.